# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANTONIO LOVATO,<br>    o/b/o A.J.L.<br><br>**Plaintiff,**<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>**Defendant.** | CIVIL ACTION<br><br>No. 17-1132-JWL |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying childhood disability and Supplemental Security Income (SSI) benefits under section 1614(a)(3)(C) of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(C) (hereinafter the Act). Finding no error as alleged by Plaintiff in the Commissioner's final decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

**I.  Background**

An application for SSI benefits was protectively filed for the minor claimant, A.J.L., alleging disability beginning January 1, 2011. (R. 23, 152)). The claimant exhausted administrative proceedings, and his father (hereinafter Plaintiff) filed this action on his behalf seeking judicial review of the Commissioner's decision. (R. 1, 67,

77); (Doc. 1). Plaintiff argues that the Administrative Law Judge (ALJ) erred in evaluating two of six domains which are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless,

the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

> A child under eighteen years of age is "disabled" if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).  A sequential three-step process guides the Commissioner's determination of whether a child meets this criteria. The administrative law judge ("ALJ") must determine, in this order, (1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404. 20 C.F.R. § 416.924(a).
>
> In making the third determination—whether a child's impairment meets or equals a listed impairment—the ALJ must consider whether the impairment, alone or in combination with another impairment, "medically equals, or functionally equals the listings."  Id.  The ALJ assesses all relevant factors, including (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his medications or other treatment. Id. § 416.926a(a)(1). The ALJ considers how a child functions in his activities "in terms of six domains":  "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being."  Id. § 416.926a(b)(1)(i)-(vi).

Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1237–38 (10th Cir. 2001).

Functional equivalence will be found only if a child has "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain.  Id. § 416.926a(a). A "marked" limitation is "a limitation that is more than moderate but less than extreme."

3

Id.  To constitute a "marked" limitation, the claimant's impairment must interfere seriously with his ability to independently initiate, sustain or complete activities.  Id. § 416.926a(e)(2)(i).  This may mean serious limitation exists in only one activity, or in several activities.  Id.

"Extreme" is the rating given the worst limitations, and occurs when a claimant's impairment interferes very seriously with his or her ability to independently initiate, sustain, or complete activities.  Id. § 416.926a(e)(3)(i).  An "extreme" limitation does not necessarily mean a total lack or loss of ability to function, but is more than "marked." Id.; see also, Briggs, 248 F.3d at 1238, n.1 (stating definition of "functional equivalency," and "marked" and "extreme" limitations).

Plaintiff does not allege error in the legal standard applied; his only argument of error is that the ALJ erred in evaluating two of the six domains used in determining whether the claimant's condition is functionally equivalent to a Listed Impairment— (ii) Attending and completing tasks, and (iii) Interacting and relating with others.  He argues that, contrary to the ALJ's findings, the claimant has at least "marked" limitations in both domains and his condition should have been found functionally equivalent to a Listed Impairment.  Therefore, the court addresses only the ALJ's consideration of these two domains.

**II.   Discussion and Analysis**

Plaintiff argues that the ALJ erred in evaluating these two domains because "she assigned significant weight" to the opinion of the claimant's 6th grade teacher, Ms. Gandy, "but assessed limitations inconsistent with the opinion." (Pl. Br. 8).  In the

4

domain of attending and completing tasks he argues that Ms. Gandy "noted 'a very serious' problem on a daily basis completing classwork and working at a reasonable pace or finishing on time." (Pl. Br. 10). He points out that Ms. Gandy noted the claimant failed to complete his assignments, and she spent one-on-one time with the claimant, redirecting him and keeping him from distracting the class. Id. He argues that Ms. Walker, the claimant's 5th grade teacher, also opined that the claimant had "a very serious" problem completing classwork and working at a reasonable pace or finishing on time on a daily basis. Id. Regarding the domain of interacting and relating with others, Plaintiff points out that Ms. Gandy opined that the claimant "had a 'very serious problem' seeking attention appropriately and interpreting meaning of facial expressions, body language, hints, and sarcasm," and "a 'serious problem' expressing anger appropriately and following rules." Id. at 9. He argues that "a serious problem," or "a very serious problem" are the most extreme categories of behavior on the forms used by the claimant's teachers to express their opinions, and are therefore inconsistent with the ALJ's findings of "less than marked limitation" in each of these domains. Therefore, he argues that the ALJ did not accord significant weight to Ms. Gandy's opinion as he says he did. Id. Plaintiff also cites additional record evidence which, in his view, supports a finding of at least marked limitation in each of these domains. Id. at 8-10.

The Commissioner argues that the ALJ properly considered the domains at issue and found a "less than marked limitation" in each. She cites to record evidence which, in her view, supports the ALJ's findings. (Comm'r Br. 11-15). She points out that Ms. Gandy found "a serious problem" in only two of 13 subcategories in the domain of

attending and completing tasks, and her opinion will not establish a marked limitation in this domain. (Comm'r Br. 12). Regarding the domain of interacting and relating with others, the Commissioner acknowledges the record evidence documents the claimant's behavioral problems at school, but points out that Ms. Gandy opined regarding "serious" or "very serious" problems in only 4 of the thirteen subcategories of behavior in this domain. Id. at 14-15. The Commissioner, apparently recognizing that the domain of interacting and relating with others is the claimant's greatest problem area, argues that even if the court were to find that the ALJ erred in evaluating that domain, the error is harmless because the domain produces at most a marked, not extreme, limitation, and a single marked limitation is insufficient to establish childhood disability. Id. at 15.

Plaintiff may be arguing that the ALJ erred because she failed to explain why she did not adopt a portion of Ms. Gandy's opinion which conflicts with her own findings, nor explain why she did not do so, but she has not shown that Ms. Gandy's opinion conflicts with the ALJ's findings. The ALJ discussed Ms. Gandy's opinion:

> On February 28, 2016, Ms. Tina Gandy, the claimant's 6th grade teacher completed a Teacher Questionnaire for the claimant indicating that the claimant was working at a 4th grade level in reading and written language and a 3rd grade level in Math; however, he did not qualify for special education in either of those subjects. She noted the claimant sat next to her desk so he could be redirected when needed and indicated that this also helped keep him from distracting others. She noted the claimant did not need extra assistance in the classroom, beyond anyone else. She reported the claimant had a wonderful sense of humor but failed to realize when it was time to get serious until he was told that she was going to ask that he repeat the 6th grade but due to failure to complete his assignments. Ms. Gandy noted after her conversation with the claimant, he began to try harder, but it was too late to bring his grades above low C's or high D's. Ms. Gandy indicated that it had been necessary to implement behavior modification strategies for the claimant with the Alternative Learning

> Center (ALC), time-out and even removal from the classroom; however, she noted the claimant only had a slight problem in using appropriate coping skills to meet daily demands of a school environment and indicated the claimant was much calmer when he was on his medications (exhibit B14E [(R. 271-79)]).

(R. 29-30). The ALJ accorded Ms. Gandy's opinion great weight. Id. 30.

As the parties suggest, but do not describe, Ms. Gandy filled out a Teacher Questionnaire regarding her observation of the claimant's functioning in each of the six domains discussed above. (R. 272-79). In each of the domains except the sixth—health and physical well-being—Ms. Gandy was asked to rate the claimant for certain activities listed for each domain. Id. Using a five-point scale, she was asked to compare the claimant's functioning in that activity to the functioning of same-aged children without impairments and rate whether he had: 1, no problem; 2, a slight problem; 3, an obvious problem; 4, a serious problem; or 5, a very serious problem. Id. In the domain of acquiring and using information there were thirteen activities listed and Ms. Gandy rated one with no problem, six with a slight problem, one with an obvious problem, two with a serious problem, and none with a very serious problem. (R. 273). In the domain of attending and completing tasks there were thirteen activities listed and Ms. Gandy rated one with no problem, five with a slight problem, five with an obvious problem, two with a serious problem, and none with a very serious problem. Id. at 274. In the domain of interacting and relating with others there were thirteen activities listed and Ms. Gandy rated four with no problem, none with a slight problem, five with an obvious problem, two with a serious problem, and two with a very serious problem. Id. at 275. Ms. Gandy stated that she observed no problems in the domain of moving about and manipulating

objects. Id. at 276.  In the domain of caring for himself there were ten activities listed and Ms. Gandy rated three with no problems, three with a slight problem, four with an obvious problem, none with a serious problem, and none with a very serious problem.  Id. at 277.

Ms. Gandy's responses indicate that the claimant has the greatest problems with the domain of interacting and relating with others; next, attending and completing tasks; next, acquiring and using information; she found relatively minor problems with caring for himself, and no problems with moving about and manipulating objects.  However, even Ms. Gandy's responses to the greatest problem domain of interacting and relating to others reveals nine activities at the midrange or below and only four activities in the more serious problem areas, two activities with serious problems—expressing anger appropriately, and following rules—and two with very serious problems—seeking attention appropriately, and interpreting meaning of facial expression, body language, hints, sarcasm. (R. 275).  In the domain of attending and completing tasks, Ms. Gandy found no activities with very serious problems, and only two activities with serious problems—completing class/homework assignments, and working at reasonable pace/finishing on time. (R. 274).

While Plaintiff argues that this opinion requires finding at least a marked limitation in the domains at issue, that is by no means obvious from considering the opinion.  Moreover, Ms. Gandy's opinion regarding the domain of attending and completing tasks is quite similar to her opinion regarding the domain of acquiring and using information, the ALJ determined both domains had a less than marked limitation,

and Plaintiff does not allege error in evaluating the domain of acquiring and using information.  The ALJ also considered and accorded great weight to the opinion of Ms. Walker (R. 30), the claimant's 5th grade teacher, who found only one activity with a serious problem on the entire questionnaire.  (R. 223-28).  Plaintiff is simply in error when he asserts that Ms. Walker found "a very serious problem" with distracting others on a daily basis.  (Pl. Br. 10) (citing R. 224).  The claimant's 4th grade teacher and his principal completed a teacher questionnaire in which they found "no problem" on any activity listed in any domain on the questionnaire (R. 189-96), and the ALJ gave that opinion great weight also.  (R. 30).

As is usual in a Social Security case, there is evidence from which the ALJ might have found greater limitation than she did.  But the court cannot say that the evidence requires such a finding.  It is the ALJ's duty to weigh the evidence in the first instance and make a decision based on that evidence.  She has done so here, she explained her decision, and the record evidence supports that decision.  More is not required.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated April 2, 2018, at Kansas City, Kansas.

        s:/ John W. Lungstrum  
        **John W. Lungstrum**  
        **United States District Judge**